# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

PHILIP TOWNSEND, M.D.,

      Plaintiff,           Case No.

v.                           **COMPLAINT**

CYNOSURE, LLC.,

      Defendant.
_____/

PHILIP TOWNSEND, M.D. ("Townsend") ("Plaintiff"), by his attorneys, as and for his Complaint, as against the Defendant, CYNOSURE, LLC, ("Cynosure" or "Defendant"), respectfully alleges upon information and belief as follows:

## PARTIES

1. Plaintiff Philip Townsend, M.D., is a citizen of the State of Florida, residing in Brooksville, Florida.

2. Defendant, formerly known as Cynosure, Inc., is a Delaware corporation with its headquarters in Westford, Massachusetts, and is a division of Hologic, Inc, which is a Delaware corporation that has headquarters in Marlborough, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this case under 28 U.S.C. section 1332 because Plaintiff and Defendant are citizens of different states. The amount in controversy is alleged to be over the minimum requirement of $75,000. Venue is proper here as well because Plaintiff Townsend resides in this District.

## FACTUAL BACKGROUND

4. This action concerns Plaintiff's purchase and financing to purchase a medical

device sold by Defendant that it denoted as the MonaLisa Touch.  Plaintiff Townsend first learned of the MonaLisa Touch through an unsolicited mailing by Brandon Roberts, a Regional Cynosure sales representative based in Miami, in December 2014 that included documents specifically touting the advantages of treating symptoms of vaginal atrophy in menopausal women.

5. In November 2015, Brandon Roberts contacted Plaintiff directly to arrange for an in-person meeting, which occurred shortly thereafter.  During the meeting, Brandon Roberts stated that the MonaLisa Touch had been "strongly recommended" by experts for treating patients with symptomatic vulvo-vaginal atrophy ("VVA").  Roberts gave Plaintiff medical articles from peer reviewed journals on the use of MonaLisa Touch fractional CO2 laser therapy system to treat VVA symptoms, advised him on the uniqueness of the MonaLisa Touch to treat such symptoms, and stated that Cynosure had evaluated Plaintiff's practice region as one of "high demand" for the treatment of VVA using the MonaLisa Touch.  He stated that Plaintiff could expect an excellent financial income from the MonaLisa Touch. Physicians elsewhere were charging between $1,500 to $3,000 for the initial three treatments over 12 weeks required for VVA followed by one maintenance treatment annually.  Another Cynosure field representative who also attended the meeting further represented to Plaintiff that he would receive up to $1,250 a treatment and "no one is getting less than $1,000."

6. Cynosure Sales Representative Brandon Roberts also represented at the meeting that the device had been approved by the United States Food and Drug Administration ("FDA") for the purpose of treating the symptoms of VVA. This representation was false.  Unbeknownst to Plaintiff, the FDA had not approved the MonaLisa Touch for the treatment of the symptoms of VVA.

7. Brandon Roberts also advised Plaintiff at the meeting that other physicians in

Florida were able to obtain insurance reimbursements for treating VVA patients. To that end, he gave to Plaintiff the names of Dr. R. Fink, an obstetrician and gynecologist (ob/gyn) in Miami and Dr. Sarah Bernstein an ob/gyn in Wellington Florida for further information on the subject of billing insurance companies.  Plaintiff later learned that Dr. Fink had been recruited by Cynosure to promote the use of the MonaLisa Touch at major marketing events in Florida. The absence of FDA approval of the MonaLisa Touch to treat VVA symptoms, however, as Plaintiff later learned, precluded insurance reimbursement for MonaLisa Touch treatments for VVA symptoms.

8. The availability of insurance was important to Plaintiff because Plaintiff's practice consisted of gynecological and gynecological oncology patients of mostly Medicare-age. These patients were predominantly covered by Medicare Florida HMO replacement insurance companies. In his area of practice, Florida HMO replacement insurance coverage of more than two thirds of his patients was through the Optimum, Freedom, Ultimate and Wellcare companies of which the first two covered the large majority.

9. Brandon Roberts also gave Plaintiff the names of two leading urogynecologists and proponents of the MonaLisa Touch – Dr. Mickey Karam and Dr. Erick Sokol – to contact for further information on their experience and study of the use of the MonaLisa Touch fractional $CO_2$ laser therapy and also sent Plaintiff a booklet concerning the MonaLisa Touch that included studies purporting to show its effectiveness in treating VVA.

10. Brandon Roberts also informed Plaintiff of a study, Knoxville Urogynecologist Jeffrey Dell, published in November 2015 on the usefulness of the MonaLisa Touch to treat vaginal atrophy and vulvar lichen sclerosus.  Dr. Dell promoted the MonaLisa Touch on behalf of Cynosure for these purposes.

11. The representations described in paragraphs 5 , 6, 7 and 9 were integral to Plaintiff

Townsend's decision to purchase the MonaLisa Touch, as Plaintiff Townsend would not have purchased this medical device unless it was FDA approved for the treatments for which Cynosure marketed it and for which he intended to use it – the treatment of the symptoms of VVA – and eligible for insurance reimbursement from Medicare and Florida HMO Medicare replacement companies for his 65 and older patients, and that he could expect $1,500 to $3,000 for a three treatment regimen.

12.     Defendant's sales representatives made the representations described in paragraphs 5, 6, 7 and 9 above to Plaintiff in order to induce him to purchase and finance the purchase of the MonaLisa Touch.

13.     In early December, 2015, Plaintiff Townsend, executed an agreement for the purchase of a MonaLisa Touch CO2 Laser Workstation powered by Smartxide ("MonaLisa Touch"), and related products.  The total cost was $215,000, and the finance company that Cynosure arranged for Plaintiff to use to finance the purchase required Plaintiff to pay an initial monthly rate of $99 for six months and then five years at $4,498.20 a month, for a total cost of $270,486.00.

14.     Plaintiff took delivery of the MonaLisa Touch in December 2015 at his offices in Brooksville, Florida.

15.     Dr. Townsend attended a workshop given by Dr. Dell in his office in Knoxville, Tennessee, in January 2016 that was sponsored by Cynosure. Dr. Dell delivered a short lecture on the use of the MonaLisa Touch to treat patients with VVA symptoms followed by a live demonstration on four patients with VVA symptoms, one of whom also had LS. Interestingly, Dr Dell commenced the workshop with a promotional talk on an unrelated product namely Cynosure's SculpSure ™ laser system for non-invasive fat cell reduction.

16. In 2016, Dr. Townsend attended two major marketing events in Orlando and Boca Raton Florida put on by Cynosure, during which he was told how to effectively market the device to treat VVA symptoms.

17. Initially, Plaintiff lost money, was only able to attract a total of 8 patients in the first year in spite of an intensive and costly marketing campaign, and only earned $400-$500 per procedure for treatments of VVA symptoms using the MonaLisa Touch. In total, 22 procedures were performed on these 8 patients during that first year, none of which had insurance that would cover the treatments.

18. Based on the lackluster success in marketing the MonaLisa Touch to women with symptoms of VVA during that first year of MonaLisa Touch use, and Plaintiff's continuing significant obligations to pay the monthly lease payments on the MonaLisa Touch, in early 2017, Plaintiff sought to mitigate his losses on the MonaLisa Touch.

19. In December 2017, Plaintiff restructured the then remaining 46 monthly payments on the lease with CIT Bank, N.A. (the assignee of the Ascentium lease) under which 45 payments in the amount of $4,680.68 were due. This restructuring followed closure of his practice for two weeks following a hurricane in September 2017.

20. On July 30, 2018, the FDA issued a warning to "patients considering any . . . procedure or <u>procedures intended to treat vaginal conditions and symptoms related to menopause</u> . . ." and to "health care providers who perform vaginal procedures using energy-based devices to "alert patients and health care providers that the use of energy-based lasers to perform . . . non-surgical vaginal procedures to treat symptoms related to menopause . . . may be associated with serious adverse events [and that] [t]he safety and effectiveness of energy-based devices for treatment of these conditions has not been established. (emphasis added). (the "July 30, 2018 FDA

Warning").

21. The FDA went on to state that "[t] o date, we have not cleared or approved for marketing any energy-based devices to treat these symptoms or conditions, <u>or any symptoms related to menopause</u> . . ." (emphasis added) but was "aware that certain device manufacturers may be marketing their energy-based medical devices for vaginal 'rejuvenation'" (which it defined to include the typical vaginal symptoms of menopause).

22. As succinctly explained by FDA Commissioner Dr. Scott Gottlieb, the FDA had:

> recently become aware of a growing number of manufacturers marketing "vaginal rejuvenation" devices to women <u>and claiming these procedures will treat conditions and symptoms related to menopause, urinary incontinence</u> or sexual function. The procedures use lasers and other energy-based devices to destroy or reshape vaginal tissue. These products have serious risks and don't have adequate evidence to support their use for these purposes. We are deeply concerned women are being harmed.

Statement from FDA Commissioner Scott Gottlieb, M.D., on efforts to safeguard women's health from deceptive health claims and significant risks related to devices marketed for use in medical procedures for "vaginal rejuvenation", dated July 30, 2018, available at https://www.fda.gov/News Events/Newsroom/PressAnnouncements/ucm615130.htm; *see also* FDA Warns Against Use of Energy-Based Devices to Perform Vaginal 'Rejuvenation' or Vaginal Cosmetic Procedures: FDA Safety Communication, dated July 30, 2018, available at https://www.fda.gov/medicaldevices/ safety/alertsandnotices/ucm615013.htm (text of warning) ("July 30, 2018 FDA Warning") (emphasis added).

23. As Commissioner Gottlieb further explained, while the FDA had cleared various laser and other energy-based devices to treat such conditions as abnormal or pre-cancerous cervical or vaginal tissue or genital warts, "the safety and effectiveness of these devices hasn't been evaluated or confirmed by the FDA for 'vaginal rejuvenation.'" *Id.* Nonetheless, companies who produce and sell these devices make "deceptive health claims" and engage in "deceptive marketing

6

of a dangerous procedure with no proven benefit," which he stated was, in a word, "egregious." *Id.* As the July 30, 2018 FDA Warning itself stated, using such devices for vaginal rejuvenation "may lead to serious adverse events," including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain. July 30, 2018 FDA Warning.

24. Cynosure was one of the companies the FDA was referring to in its July 30, 2018 FDA Warning with regard to its marketing of its energy-based laser – the MonaLisa Touch.

25. In a letter dated July 24, 2018 to Cynosure, the FDA raised a number of examples of Cynosure's improper marketing of its MonaLisa Touch to treat the vaginal symptoms of menopause which the FDA could hardly have been clearer – are purposes for which it was not approved by the FDA and for which its safety and effectiveness had not been established. The FDA stated that the MonaLisa Touch had only been cleared "for incision, excision, ablation, vaporization and coagulation of body soft tissues in medical specialties including aesthetic (dermatology and plastic surgery), podiatry, otolaryngology (ENT), gynecology, neurosurgery, orthopedics, general and thoracic surgery (including open and endoscopic), dental and oral surgery and genitourinary surgery."  July 24, 2018 Letter from Cesar A. Perez, PhD, Chief of the Surveillance and Enforcement Brach, Division of Premarket and Labeling Compliance, Office of Compliance, Center for Devices and Radiological Health to Connie Hoy, Official Correspondent, Cynosure, Inc.

26. On or about July 30, 2018, Plaintiff became aware of the July 30, 2018 FDA Warning, which revealed to him for the first time that the MonaLisa Touch was not FDA approved for the purposes for which Defendant sold the MonaLisa Touch to Plaintiff and the treatments for which Defendant's Sales Representative represented to Plaintiff (i.e. the treatment of the symptoms of VVA).  Plaintiff justifiably ceased using the device due to the FDA warnings and lack of FDA

approval. Patients were also angry, and Plaintiff Townsend suffered damage to his professional reputation.

27. Following the FDA announcement of July 2018, Plaintiff Townsend was visited in his medical office by representatives of the Optimum and Freedom Medicare Replacement HMO insurance companies, which are jointly owned, whose members made up the majority of patients being treated by him with the MonaLisa Touch. They advised Plaintiff Townsend that, given the FDA Warning, they would no longer pay for any treatments with the MonaLisa Touch. They also stated they were considering advising Medicare that all monies billed for these MonaLisa Touch treatments be returned. Later they chose instead to negate the contracts Plaintiff Townsend had in place with them to treat all of his patient members for any reason. The letter of contract termination stated it was for "Business Reasons." The loss of these contracts resulted in a loss of at least half of Plaintiff's practice. In addition, the burden of the continuing lease payments on the MonaLisa Touch and other overhead, led to Plaintiff having to declare personal bankruptcy in February 2020. Plaintiff's bankruptcy was concluded in May 2020.

28. Had Plaintiff been aware that the MonaLisa Touch was not FDA approved for the treatments for which Defendant marketed the device to him (treating the vaginal symptoms of menopause), or that it was not eligible for insurance reimbursement from Medicare and Florida HMO Medicare replacement insurance, Plaintiff would not have purchased the MonaLisa Touch or agreed to finance that purchase. Plaintiff purchased the MonaLisa Touch strictly for the procedures that were marketed by Defendant as being approved by the FDA (the treatment of the symptoms of VVA), as set forth above, and for no other purpose.

29. As a result, Plaintiff has suffered damages including the cost of purchasing and financing the purchase of the MonaLisa Touch at issue here and the cost of the service contract.

## FIRST CAUSE OF ACTION

## CLAIM UNDER THE FDUTPA

30. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "29" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

31. Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

32. Defendant Cynosure engaged in the deceptive and unfair practices of marketing and selling the MonaLisa Touch by misrepresenting that the MonaLisa Touch had been approved by the FDA to treat the symptoms of VVA and that he could obtain insurance reimbursements for treatments on 65 and older patients.

33. These practices were likely to deceive a consumer such as Plaintiff acting reasonably in the same circumstances.

34. These practices damaged Plaintiff by causing him to purchase a medical device and enter a financing agreement leading to a loss of hundreds of thousands of dollars, his need to declare personal bankruptcy, and damage to his personal reputation. These actions were likely to and did deceive Plaintiff.

35. Defendant thereby violated Fla. Stat. § 501.204(1) prohibiting unlawful acts and practices in trade of commerce.

36. As a result of the Defendant's deceptive or unfair practices, Plaintiff has suffered damages including the costs he has incurred (and obligated to incur) in purchasing and financing the MonaLisa Touch which Plaintiff Townsend would not have purchased or financed had he not been misled by Defendant that the MonaLisa Touch was FDA approved to treat the symptoms of VVA and that insurance coverage was available for treatments of 65 or older patients by Medicare

and HMO replacement companies. Plaintiff is therefore entitled to damages under Fla. Stat. § 501.211(2).

## SECOND CAUSE OF ACTION

### FRAUD

37. Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "29" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

38. As set forth in paragraphs 5, 6, 7 and 9 above, Defendant's representatives made material misrepresentations of then existing facts to induce Plaintiff to purchase the MonaLisa Touch and finance that purchase. These representations were made with the intent and purpose to cause Plaintiff to rely upon them and purchase and finance his purchase of the MonaLisa Touch.

39. Contrary to these representations, Defendant knew that the MonaLisa was not approved by the FDA to treat the symptoms of VVA (which approval was necessary for Medicare and Florida HMO replacement insurance reimbursement) at the time these representations were made, or acted in reckless disregard of this fact, based on, among other things, its communications with the FDA concerning approvals of the MonaLisa Touch and its procedures. Indeed, unbeknownst to Plaintiff, on or about March 17, 2015, Cynosure sought FDA approval to market its MonaLisa Touch laser for "the treatment of symptoms related to GSM including Vaginal Dryness, Vaginal Burning, Vaginal Itching, Pain, Dysuria and Dyspareunia" but the FDA informed Cynosure on or about June 5, 2015 that these intended uses of the MonaLisa Touch raise "different safety and effectiveness questions" than the uses for which the MonaLisa Touch had previously been approved by the FDA. None of that history was made available to Plaintiff; it was not available publicly.

40. Plaintiff justifiably relied upon Defendant's representations given Defendant's superior knowledge as to what the FDA did (or did not approve) and the uses for which the MonaLisa Touch was approved by the FDA and regarding insurance reimbursement for treatments of 65 or older patients by Medicare and HMO replacement companies in agreeing to purchase and finance the purchase of the MonaLisa Touch.

41. As a result of the Defendant's false or misleading statements, Plaintiff has suffered damages including the costs he has incurred (and been obligated to incur) in purchasing and financing the MonaLisa Touch that Plaintiff would not have purchased or financed had he not been misled by Defendant that the MonaLisa Touch was FDA approved to treat the symptoms of VVA and that insurance coverage was available for treatments of 65 or older patients by Medicare and HMO replacement companies.

## THIRD CAUSE OF ACTION

### FRAUD IN THE INDUCEMENT

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "29" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

43. As set forth in paragraphs 5, 6, 7 and 9 above, Defendant's representatives made material misrepresentations of then existing facts to induce Plaintiff to purchase the MonaLisa Touch and finance that purchase. These representations were made with the intent and purpose to cause Plaintiff to rely upon them and enter an agreement to obtain and finance a MonaLisa Touch.

44. Contrary to these representations, Defendant knew that the MonaLisa was not approved by the FDA to treat the symptoms of VVA (which approval was necessary for Medicare and Florida HMO replacement insurance reimbursement) at the time these representations were

made, or acted in reckless disregard of this fact, based on, among other things, its communications with the FDA concerning approvals of the MonaLisa Touch and its procedures. Indeed, unbeknownst to Plaintiff, on or about March 17, 2015, Cynosure sought FDA approval to market its MonaLisa Touch laser for "the treatment of symptoms related to GSM including Vaginal Dryness, Vaginal Burning, Vaginal Itching, Pain, Dysuria and Dyspareunia" but the FDA informed Cynosure on or about June 5, 2015 that these intended uses of the MonaLisa Touch raise "different safety and effectiveness questions" than the uses for which the MonaLisa Touch had previously been approved by the FDA. None of that history was made available to Plaintiff; it was not available publicly.

45. Plaintiff justifiably relied upon Defendant's representations given Defendant's superior knowledge as to what the FDA did (or did not approve) and the uses for which the MonaLisa Touch was approved by the FDA and regarding insurance reimbursement for treatments of 65 or older patients by Medicare and HMO replacement companies in agreeing to purchase and finance the purchase of the MonaLisa Touch.

46. As a result of the Defendant's false or misleading statements, Plaintiff entered into purchase and leasing agreements and has suffered damages including the costs he has incurred (and been obligated to incur) in purchasing and financing the MonaLisa Touch that Plaintiff Townsend would not have entered into had he not been misled by Defendant that the MonaLisa Touch was FDA approved to treat the symptoms of VVA and that insurance coverage was available for treatments of 65 or older patients by Medicare and HMO replacement companies.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

47. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in

paragraphs "1" through "29" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

48. Defendant has received the purchase price it charged Plaintiff to purchase the MonaLisa Touch. Defendant would not have received the purchase price had Defendant been truthful about the absence of FDA approval to treat the symptoms of VVA and regarding the availability of insurance reimbursement for treatments of 65 or older patients by Medicare and HMO replacement companies.

49. By virtue of their obtaining these monies paid by Plaintiff to purchase the MonaLisa Touch, Defendant has been unjustly enriched and has appreciated that benefit to the detriment of Plaintiff.

50. Defendant's retention of the monies it has gained through its wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

51. It would be against equity and good conscience for Defendant to retain these funds given the misrepresentations Defendant utilized to induce Plaintiff to purchase and finance the MonaLisa Touch.

52. Defendant should be required to make restitution to Plaintiff, in an amount to be determined, of the monies Defendant has obtained from Plaintiff directly or indirectly by which it has been unjustly enriched.

## FIFTH CAUSE OF ACTION
## MONEY HAD AND RECEIVED

53. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "29" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

54. Defendant has received money including the purchase price at which Plaintiff was obligated to purchase the MonaLisa Touch. Defendant would not have received the purchase price had Defendant been truthful about the absence of FDA approval to treat the symptoms of VVA and regarding insurance reimbursement for treatments of 65 or older patients by Medicare and HMO replacement companies.

55. By virtue of their obtaining monies in connection with their practices which are unlawful in the State of Florida, Defendant has been unjustly enriched to the detriment of Plaintiff.

56. Defendant's retention of the monies it has gained through its wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

57. Defendant's enrichment was at Plaintiff's expense, inasmuch as Plaintiff Townsend entered lease and financing agreements and staked future business and reputation to purchase and use the MonaLisa Touch.

58. Defendant should be required to make restitution to Plaintiff, in an amount to be determined, of the monies Defendant has received from Plaintiff directly or indirectly. It is against the principles of good conscience for Defendant to retain these monies without compensating Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as against the Defendant as follows:

A. For compensatory, equitable and/or restitutionary damages available under the causes of action set forth herein according to proof;

B. Attorneys fees and costs; and

C. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: January 8, 2021                                   **VARNELL & WARWICK, P.A.**

                                        By:   /s/ Janet R. Varnell
                                              Janet R. Varnell, FBN: 0071072
                                              Brian W. Warwick, FBN: 0605573
                                              Matthew T. Peterson, FBN: 1020720
                                              Erika Willis, FBN: 100021
                                              1101 E. Cumberland Ave., Ste. 201H, #105
                                              Tampa, FL 33602
                                              Telephone: (352) 753-8600
                                              Facsimile: (352-504-3301
                                              *jvarnell@varnellandwarwick.com*
                                              *bwarwick@varnellandwarwick.com*
                                              *mpeterson@varnellandwarwick.com*
                                              *ewillis@varnellandwarwick.com*
                                              *kstroly@varnellandwarwick.com*

                                              KLAFTER OLSEN & LESSER LLP
                                              Jeffrey A. Klafter
                                              Seth R. Lesser
                                              Cyrus Kornfeld
                                              KLAFTER OLSEN & LESSER LLP
                                              Two International Drive, Suite 350
                                              Rye Brook, New York 10573
                                              Telephone:  (914) 934-9200

                                                        – and –

                                              JAVERBAUM WURGAFT HICKS KAHN
                                              WIKSTROM & SININS, P.C.
                                              Michael A. Galpern
                                              100 Century Parkway, Suite 305
                                              Mount Laurel, NJ 08054
                                              Telephone:  (973) 379-4200

                                              ***Attorneys for Plaintiff***